[No. B180471. Second Dist., Div. Seven. May 11, 2005.]

JACQUELINE YTUARTE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CAROLINE KASHANI et al., Real Parties in Interest.

COUNSEL

Ralph S. Greer and Thayer & Thayer and Irwin Thaler for Petitioner.

No appearance for Respondent.

Pollak, Vida & Fisher, Michael M. Pollak, Hamed Amiri Ghaemmaghami; The Law Offices of Marsha Munemura and Nai Alamo-Hecht for Real Parties in Interest.

OPINION

**WOODS, J.**—Jacqueline Ytuarte filed a petition for writ of mandate directing respondent superior court to vacate its order denying her motion to reclassify her case from a limited to unlimited civil action. Among her assertions, Ytuarte claims the court applied the incorrect legal standard in making its determination that the damages in her case would be less than the jurisdictional minimum of $25,000 to qualify as an unlimited civil action. In *Walker v. Superior Court* (1991) 53 Cal.3d 257 [279 Cal.Rptr. 576, 807 P.2d 418], the Supreme Court held that a trial court may reclassify a case as a "limited" civil action only where the court determines the matter will necessarily result in a verdict below $25,000. Here, however, the trial court informed Ytuarte that to have her case reclassified and transferred to an unlimited jurisdiction court she had to demonstrate with a *high level of certainty* that the damage award would *exceed* $25,000. As we shall explain, the legal standard the court applied runs afoul of the principles and underlying rationale of *Walker.* In our view, Ytuarte was entitled to reclassification of her action as unlimited if she demonstrated a *possibility* the damages would

exceed $25,000. Under the *Walker* principles the trial court should have reviewed the record to determine whether a judgment in excess of $25,000 was obtainable. If it appeared a jurisdictionally appropriate verdict could have possibly resulted, then the court should have granted the motion to reclassify the case as "unlimited." The court should have denied the motion only where it appeared to a *legal certainty* Ytuarte's damages would *necessarily be* $25,000 or less. Because the trial court did not apply the correct legal standard to Ytuarte's motion, we grant the writ of mandate.

## FACTUAL AND PROCEDURAL HISTORY

Ytuarte's action arises out of an August 2003 three-vehicle collision at the intersection of Olympic and Robertson. Ytuarte filed her complaint against the drivers of the other vehicles in January 2004. Among various allegations in her complaint, she seeks to recover for personal injuries, medical expenses, loss of earnings and real property damages. She also designated her case as an "unlimited civil case," alleging her damages exceeded $25,000. The defendants filed cross-complaints against each other seeking indemnity, apportionment of fault and property damage.

In June 2004, the trial court issued an order to show cause (OSC) as to why the action should not be reclassified as a "limited civil action." Ytuarte opposed the reclassification arguing the amount in controversy exceeded the jurisdictional maximum ($25,000) to qualify as a limited civil action. She argued (as of the OSC hearing) she had incurred medical bills and expenses attributed to the accident in excess of $6,200, that she had lost about $25,000 in income and neither defendant had taken responsibility for the property damage to her vehicle. She also attached various exhibits (i.e., medical billing, medical reports and employment and income-related documents) which purportedly demonstrated the damage claims.

On June 22, 2004, at the OSC hearing the court found "there is no likelihood of obtaining a verdict in excess of $25,000," and the court ordered the action reclassified as a limited jurisdiction action. Seven days later on June 29, 2004, Ytuarte filed a motion for reconsideration, claiming that when the court reclassified the action on June 22, 2004, "it may not have considered the evidence of $25,000 in loss of income." As new evidence of her loss of income, Ytuarte attached her declaration and excerpts from her deposition and interrogatories. On August 16, 2004, the court denied the motion for reconsideration.

On November 9, 2004, Ytuarte filed a motion seeking to have her case reclassified as an unlimited civil action. Ytuarte claimed that in addition to her alleged $25,000 loss of earnings, she continued to suffer from residual

injuries and continued to incur medical expenses, which then totaled over $8,500. She asserted that in late August 2004 she sought additional medical treatment for continuing pain in her back and neck. Ytuarte also attached the declaration of her orthopedic doctor. According to her doctor, in September 2004, Ytuarte obtained an MRI examination for her complaints of chronic pain and based on reports from the MRI, her doctor opined Ytuarte was a candidate for a "pain management program," and a candidate for additional medical procedures the future costs of which would be in the $10,000 to $15,000 range. Based on this evidence, Ytuarte requested the court reclassify her action as an unlimited civil action because it was possible the verdict in her case would fall within the jurisdiction of the unlimited civil court.

The defendants opposed the motion, arguing Ytuarte failed to establish her loss of income claims and her claims for future medical expenses were speculative. At the hearing on the motion, when the parties discussed the appropriate legal standard to reclassify the case, Ytuarte noted that under *Walker v. Superior Court, supra,* 53 Cal.3d 257, the standard for reclassification from "unlimited" to "limited" is whether the matter will "necessarily result in a verdict below the superior court [in an unlimited case] minimal jurisdiction"; and that the matter may not be reclassified as a "limited" case unless it appears to a "legal certainty" that the plaintiff cannot recover more than $25,000. Consequently, Ytuarte asserted the court could deny her motion to reclassify the matter and keep it as a limited civil case *only* if the court found the matter would necessarily result in a verdict below $25,000. The court disagreed, and read *Walker* to require "a high level of certainty the damages will *exceed* $25,000" to reclassify the matter as unlimited. To that end, the court told Ytuarte: "[w]ell, it's your burden [Ytuarte's] to show the high level of certainty that that the damage award will exceed $25,000."

After taking the matter under submission, on January 4, 2005, the court denied the motion. On January 18, 2005, Ytuarte filed a petition for a writ of mandate and this court issued an OSC.[1]

## DISCUSSION

In her petition Ytuarte asserts the limited civil court erred in denying her motion to reclassify her case as an unlimited civil action. As set forth more

---

[1] A petition for a writ of mandate in the Court of Appeal is a proper procedure to seek review of an order denying a motion to reclassify an action. (Code Civ. Proc., § 403.080 ["When an order is made by the superior court granting or denying a motion to reclassify an action or proceeding . . . the party aggrieved by the order may, within 20 days after service of a written notice of the order, petition the court of appeal for the district in which the court granting or denying the motion is situated for a writ of mandate requiring proper classification of the action or proceeding"].)

fully below, we conclude this matter must be returned to the superior court to reassess the merits of Ytuarte's motion because the trial court applied an incorrect legal standard in ruling on the motion. Before reaching this issue, however, we address a preliminary matter real parties raise concerning the timeliness of Ytuarte's petition.

### A. *Ytuarte Filed Her Writ Petition Timely.*

In their return, real parties assert this court should summarily deny Ytuarte's petition as untimely filed under Code of Civil Procedure[2] section 403.080. They argue the writ petition essentially seeks review of the superior court's original June 22, 2004, order reclassifying the action from unlimited to limited jurisdiction. They claim Ytuarte's subsequent November 2004 motion to reclassify her action as unlimited essentially asserted the same arguments and relied on the same evidence included in her opposition to the court's June 2004 OSC. Real parties urge this court to reject Ytuarte's January 18, 2005, writ petition as untimely because under section 403.080 Ytuarte's opportunity to seek review of the June 22, 2004, order expired 20 days after that order became final.

We do not agree. Ytuarte's petition does not request review of the superior court's June 2004 order reclassifying her case as a limited civil action. Instead, Ytuarte's petition expressly seeks review of the court's January 4, 2005, order denying her motion to have her case reclassified as an unlimited civil action. Ytuarte's opposition to the June 2004 OSC and her subsequent motion to reclassify the action are distinct. Ytuarte presented the same legal arguments in her motion that she asserted in opposition to the OSC. Nonetheless, she based her reclassification motion on alleged new evidence which purportedly emerged in August and September 2004 concerning the current and future extent of her damages—evidence which she argued demonstrated the possibility the verdict could exceed the jurisdictional maximum in a limited civil case. Thus, we conclude Ytuarte's time (i.e., 20 days) to seek writ review commenced to run in early January 2005 when the court served notice of its order denying her motion for reclassification. Consequently, her January 18, 2005, writ petition was timely filed under section 403.080.

### B. *The Superior Court Applied the Incorrect Legal Standard in Determining Whether to Reclassify the Case as an Unlimited Civil Action.*

The "reclassification" of civil actions has proven complicated for the superior courts and the issue has been further confused by the unification of

---

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

the court system. Our analysis thus begins with brief background and overview on the organization of the superior courts, the important distinctions between limited and unlimited civil actions and the rules and procedures governing reclassification of cases. Against this backdrop, the appropriate legal standards for reclassification of actions are illuminated.

### 1. *Unification of the courts*

Prior to 1998, California counties had two major designations of civil courts—the superior courts and the municipal courts, and each court system had separate subject matter jurisdiction. Among other matters, the municipal court had jurisdiction over cases where the amount in controversy was $25,000 or less and the superior court had jurisdiction over cases above $25,000. A case filed in the superior court whose amount in controversy did not meet the jurisdictional minimum was subject to "transfer" of jurisdiction under section 396 from superior court to the municipal court. (*Walker v. Superior Court, supra*, 53 Cal.3d at p. 264.)

In 1998 the California Constitution was amended to permit unification of the municipal and superior courts in each county into a single superior court system having original jurisdiction over all matters formerly designated as superior court and municipal court actions. (Cal. Const., art. VI, § 5.) After unification, the municipal courts ceased to exist. (See *TrafficSchoolOnline, Inc. v. Superior Court* (2001) 89 Cal.App.4th 222, 228 [107 Cal.Rptr.2d 412].) Now civil cases formerly within the jurisdiction of the municipal courts are classified as "limited" civil cases, while matters formerly within the jurisdiction of the superior court's are classified as "unlimited" civil action. (§§ 85, 88.)

Notwithstanding the new labels the "amount in controversy" distinctions remain. Whether an action qualifies as a limited or unlimited civil action is determined initially from the prayer or demand for relief in the plaintiff's complaint. Once classified as limited or unlimited that classification normally continues throughout the litigation. If, however, a matter has been designated as an unlimited action, and yet the amount of controversy is $25,000 or less, the statutory scheme authorizes "reclassification" of the case as a "limited" action and transfer of the matter to a superior court presiding over such actions. (§ 403.040, subd. (a).)

### 2. *Distinctions between limited and unlimited civil actions*

The designation of a case as either a limited or an unlimited action has significant implications because the available relief and applicable procedures differ as to each. Most significantly, if a case is designated as a limited

civil case, the court has no authority (i.e., jurisdiction) to award a judgment in excess of $25,000. (See *Ash v. Hertz Corporation* (1997) 53 Cal.App.4th 1107, 1110 [62 Cal.Rptr.2d 192]; §§ 85, subd. (a), 86, subd. (a), 396.) In contrast, a court presiding in unlimited civil actions may enter a judgment that falls within the range of a limited civil action and/or that could have been entered in a limited civil court. (See § 403.040, subd. (e) ["Nothing in [§ 403.040] shall be construed to require the superior court to reclassify an action or proceeding because the judgment to be rendered, as determined at the trial or hearing, is one that might have been rendered in a limited civil case"]; *Williams v. Superior Court* (1989) 216 Cal.App.3d 378, 382 [264 Cal.Rptr. 677].)

In addition to limitations on the amount of the verdict, a court in a limited civil action cannot determine the title to real property. (See § 86, subd. (b)(1).) Moreover, a plaintiff in a limited civil action may not obtain a permanent injunction and has fewer rights for declaratory relief than a litigant in an unlimited case. (See § 86, subd. (a)(7) & (8).) Discovery is also circumscribed in limited civil cases. (§§ 91–94.) Furthermore, the forum for appeal also differs—limited civil cases are appealed to the appellate division of the superior court rather than this court. (See § 904.2.)

These distinctions are reflected in the language of statutory scheme governing the designation of civil actions. The boundaries of "limited" civil actions are narrowly and precisely delineated and defined. Pursuant to section 85 a proceeding *may not* be treated as a limited civil action *unless all* of the following conditions are satisfied: (a) the amount in controversy[3] does not exceed $25,000; (b) the relief sought is a type that may be granted in a limited civil case; and (c) the relief sought is exclusively of a type described in the statutes, including section 86, that classify an action as a limited civil case or that provide the action is within the jurisdiction of a court presiding over limited civil cases. (§ 85.) In contrast, the statutory scheme contains a broad catchall definition of "unlimited" civil actions, designating them as all actions and proceedings other than limited civil actions. (§ 88.)

### 3. *Walker and the principles governing the reclassification of actions*

Pursuant to section 403.040, a party may file a motion for reclassification of an action within the time allowed for that party to amend the initial pleading (or in the case of the defendant or cross-defendant within the time to respond to the initial pleading) and the court shall grant the motion and order the case reclassified, regardless of fault or lack of fault, if the case has been

---

[3] Section 85 defines "amount in controversy" as "the amount of the demand, or the recovery sought, or the value of the property, or the amount of the lien, that is in controversy in the action, exclusive of the attorneys' fees, interest and costs." (§ 85, subd. (a).)

classified in an incorrect jurisdictional classification. (§ 403.040, subd. (a).[4]) Relevant here, section 403.040, subdivision (b) provides a party may file a motion for reclassification after the initial pleading and response period, and the court shall grant the motion and order reclassification if (1) the case is incorrectly classified; and (2) the moving party shows good cause for not seeking reclassification earlier.

■ The trial court's decision on a reclassification motion is reviewed by this court for an abuse of discretion. (*Walker v. Superior Court, supra,* 53 Cal.3d at p. 272; *Singer v. Superior Court* (1999) 70 Cal.App.4th 1315, 1319 [83 Cal.Rptr.2d 355].)

The confusion in reclassification proceedings centers on the appropriate legal standard the courts should apply in determining whether a case has been incorrectly classified and more specifically, whether the evidence discloses the amount in controversy in a particular case qualifies the action as an unlimited civil case.

Prior to *Walker,* the Courts of Appeal had split on when a trial court could order a transfer based on the amount in controversy. One line of cases held the superior court could not transfer a case to the municipal court unless the demand for relief was fraudulent or fictitious on its face. (E.g., *Davis v. Superior Court* (1972) 25 Cal.App.3d 596, 599–601 [102 Cal.Rptr. 238].) Another line of case law allowed the superior court to transfer a case to the municipal court when the court concluded a judgment in excess of $25,000 was "unlikely" or "not reasonably probable." (See e.g., *Campbell v. Superior Court* (1989) 213 Cal. App.3d 147, 153 [261 Cal.Rptr. 509].) The *Walker* court, which considered orders transferring cases from the superior court to the municipal court based on the amount in controversy, rejected both of the alternatives suggested by the Courts of Appeal. The Supreme Court concluded the first alternative was too narrow and inconsistent with the court's inherent power to consider jurisdictional qualifications of pending matters. (*Walker v. Superior Court, supra,* 53 Cal.3d at pp. 265–267.) Nonetheless, the *Walker* court rejected the alternative standard as too broad, raising serious constitutional questions. (*Id.* at p. 268.) Consequently, the *Walker* court crafted its own standard.

■ Under the *Walker* standard a matter may be reclassified as a limited civil action "when (i) the absence of jurisdiction is apparent before trial from the complaint, petition, or related documents, *or* (ii) during the course of pretrial litigation, it becomes clear that the matter will 'necessarily' result in a verdict below the superior court's jurisdictional amount . . . ." (*Walker v.*

---

[4] The court may reclassify a case at any time sua sponte. (§ 403.040, subd. (a).)

*Superior Court, supra*, 53 Cal.3d at p. 262.) Even more appropriately, "... the test [is] . . . whether 'lack of jurisdiction is clear'. . . '[or] virtually unattainable. . . .' " (*Id.* at p. 269, citation omitted.) This standard involves an evaluation of the amount fairly in controversy, not an adjudication of the merits of the claim, and according to *Walker,* requires a "high level of certainty that [the] damage award *will not* exceed $25,000." (*Ibid.,* italics added.) The Supreme Court explained: " 'The [trial] court may believe it highly unlikely that plaintiff will recover the amount demanded, but this is not enough to defeat jurisdiction, unless it appears to a legal certainty that plaintiff cannot recover the amount [of the] demand[].' " (*Id.* at p. 270.)

█ In *Maldonado v. Superior Court* (1996) 45 Cal.App.4th 397, 401 [52 Cal.Rptr.2d 805], Division Three of the Fourth District applied the *Walker* standards and determined a transfer from superior court to municipal court was an abuse of discretion when the plaintiff's medical bills totaled over $7,000 and the doctors' reports described disc herniation and protrusion. One doctor's opinion was that there was a "good chance" the plaintiff would have to undergo more surgery. The *Maldonado* court concluded: "The *unlikeliness* of a judgment in excess of $25,000 is *not the test.* The trial court reviews the record to determine whether the result is obtainable. Simply stated, the trial court looks to the *possibility of a jurisdictionally appropriate verdict, not to its probability.*" (*Id.* at p. 402, third italics added.)

Accordingly under *Walker* the superior court must deny the motion to reclassify the case as limited (and thus keep the matter in the unlimited civil court) *unless* it appears to a legal certainty that the plaintiff's damages will necessarily be less than $25,000. This standard of "legal certainty" is not met when it appears a verdict within the unlimited court's jurisdiction is "possible." (See *Maldonado v. Superior Court, supra,* 45 Cal.App.4th at p. 402; *Chahal v. Superior Court* (1999) 73 Cal.App.4th 399, 399–400, 403 [86 Cal.Rptr.2d 428] [the "possibility" the plaintiff's damages could exceed $25,000 demonstrated the trial court had abused its discretion in ordering the case transferred to municipal court].) Viewed from the perspective of the party opposing reclassification (from unlimited to limited), to defeat the motion (or oppose the OSC) the party must present evidence to demonstrate a *possibility* that the verdict will exceed $25,000. (See *Singer v. Superior Court, supra,* 70 Cal.App.4th at p. 1320 [finding superior court abused its discretion in ordering case transferred to municipal court because the plaintiff sought damages for pain and suffering—claims which were not subject to precise pretrial measurement, and thus, the possibility existed the plaintiff's total damages could exceed jurisdictional limit of the municipal court].)

■ The high threshold required to reclassify a case from an unlimited action to a limited action is warranted in view of the circumscribed procedures and recovery available in the limited civil courts. "A transfer must be made only when the lack of jurisdiction is clear on the face of the record before the court *because the transfer [i.e., reclassification as a limited case] deprives the plaintiff from attempting to prove damages greater than those available in [the limited civil] court.*" (*Williams v. Superior Court (Gemco/Lucky Stores*) (1990) 219 Cal.App.3d 171, 175–176 [268 Cal.Rptr. 61], italics added, fn. omitted.) To that end superior courts have long been cautioned to order transfers sparingly and only in the clearest of circumstances after a thorough review of the facts of the case. (*Walker v. Superior Court, supra,* 53 Cal.3d at pp. 270–271, [calling for "[C]aution . . . in this context" and "the transfer power [should not be used] as 'an unfettered means of clearing crowded . . . calendars . . . .' "].)

With this background and these principles in mind, we turn to the circumstances of this case.

4. *The standard applied in this case*

Here, the transcript from the hearing on Ytuarte's motion to reclassify her action discloses the trial court articulated and applied the reverse of the *Walker* standard. The court stated that reclassification as an unlimited action would require Ytuarte to demonstrate "a high level of certainty the damages would *exceed* $25,000." If this motion had concerned the reclassification from an "unlimited" to a "limited" action, the court's misstatement of the law and subsequent misapplication of the *Walker* standard would, as the principles discussed above indicate, be obvious.

But this case arises in a different factual context. Unlike *Walker* and all of the cases which follow it, this action involves a motion to reclassify (and transfer) a case from "limited" to "unlimited" jurisdiction. The question thus is whether the legal standard and principles governing the reclassification of cases is different when a party seeks to have the case reclassified as an unlimited civil action.

■ Neither the Legislature nor case law has articulated the appropriate standard to apply in this context. Nonetheless, in light of the nature of the statutory scheme and the significant implications of the classification, in our view, the same legal principles underlying *Walker* should apply when a party is seeking to reclassify its case as an unlimited civil action. The underlying rationale of the *Walker* standard operates with equal force here. Classification

as a limited case deprives the plaintiff from obtaining damages greater than $25,000. In contrast, classification as an unlimited case deprives the plaintiff of nothing—the court in an unlimited case may enter a damage award that exceeds or falls below $25,000. Consequently, the court should reject the plaintiff's effort to reclassify the action as unlimited only when the *lack* of jurisdiction as an "unlimited" case is certain and clear.

Consequently, in assessing Ytuarte's motion to reclassify her case as an unlimited civil action the *Walker* principles would require the court to determine whether based on the record before the court, it appears Ytuarte's damages will necessarily be $25,000 or less. Contrary to the trial court's statements at the hearing on her motion, Ytuarte is not required to show "the *high level of certainty* her the damage award will *exceed* $25,000" to obtain reclassification. Instead, Ytuarte must present evidence to demonstrate a *possibility* the damages will exceed $25,000. The trial court, without adjudicating the merits of the underlying case, should review the record to determine whether a judgment in excess of $25,000 is obtainable. If a jurisdictionally appropriate verdict may result, (i.e., if such a verdict is not virtually unobtainable) the court should grant the motion to reclassify the case as "unlimited." Concomitantly, the court may deny the motion only where it appears to a legal certainty that the plaintiff's damages will *necessarily be* $25,000 or less.[5]

In our view, this standard is consistent with the statutory framework and case law governing the treatment of limited and unlimited cases. But even more, this standard serves to encourage parties to classify cases accurately and fairly and to evaluate damage claims from the outset of the litigation. It will also discourage litigants from inflating damage claims out of fear that if the case is designated as "limited" it will face nearly an insurmountable hurdle to later reclassification.

■ In view of the foregoing, we conclude the court applied the wrong standard in denying Ytuarte's motion to reclassify the action. As a result, this matter must be returned to the trial court to apply the proper standard for reclassification and to consider the merits of Ytuarte's motion.[6]

---

[5] Given this analysis we conclude these standards should apply whether the case was designated as a "limited" case from the outset of the litigation and a party (or the court) subsequently seeks to reclassify the matter as unlimited, or where, as here, the case was originally designated as "unlimited," thereafter reclassified as a "limited" action and subsequently a party seeks to have the matter reclassified again and returned to the "unlimited" civil court.

[6] This court has not reviewed the underlying merits of Ytuarte's motion and nothing in this opinion should be read as reflecting a view on the merits.

## *DISPOSITION*

Let a peremptory writ of mandate issue commanding the trial court to: (1) vacate its January 4, 2005, order denying petitioner's motion to reclassify the case and to transfer it from limited to unlimited jurisdiction; and (2) consider and decide petitioner's motion in light of the views expressed in this opinion. Petitioner is awarded costs.

Johnson, Acting P. J., and Zelon, J., concurred.